## 17305.  WILLINGHAM STONE COMPANY *v.* WHITE-STONE MARBLE COMPANY.

1. "Three elements are essentials to a contract of sale: 1. An identification of the thing sold. 2. An agreement as to the price to be paid. 3. Consent of the parties." Civil Code (1910), § 4106. In this suit in trover, it indisputably appearing that when the property sued for was turned over by the agent of the plaintiff to himself as the agent of the defendant it was without the knowledge or consent of either principal, and with no further purpose or intent than that the principals might thereafter agree upon a sale and the terms of a sale as between themselves, the transaction did not meet the requirements of a sale.

2. While the effect and scope of the doctrine known as "the law of the case" does not extend to the line of reasoning or argument set forth in the opinion rendered, it does include every applicable proposition of law actually applied to the facts and pleadings involved; and a rule

Agency, 2 C. J. p. 838, n. 60.
Appeal and Error, 4 C. J. p. 1093, n. 77; p. 1105, n. 43; p. 1106, n. 58; p. 1111, n. 81, 82.
Sales, 35 Cyc. p. 44, n. 94 New; p. 48, n. 17; p. 50, n. 27.

thus announced, so far as it relates to the case in which it was laid down, is, in all subsequent proceedings therein, binding alike upon the trial court and the appellate court announcing it. *Stansal* v. *Columbian National Life Ins. Co.*, 27 *Ga. App.* 537, 542 (109 S. E. 297).

(*a*) When this suit in trover was heretofore adjudicated by this court in reversing a directed verdict in favor of the defendant on the first trial (33 *Ga. App.* 512), the principle of law applied was that the action of the court below was error for the reason that it was a disputed issue, to be resolved by the jury, whether "the person from whom the defendant acquired the property and from whom he claimed to have bought it had authority as agent of the plaintiff to sell the property." The ruling then made to the effect that the acts and conduct of the plaintiff might be taken as a ratification of the alleged agent's conduct is binding upon this court as the law of the case; but since it appears that such acts and conduct of the agent did not amount to a sale, whether ratified or not, the former decision would not require the judge to submit the question of a sale to the jury, and he did not err in confining the issue to be determined by the jury to the amount of the plaintiff's recovery as determined by the value of the converted property.

DECIDED DECEMBER 20, 1926.

Trover; from Fulton superior court—Judge Humphries. March 13, 1926:

*John S. Wood, D. K. Johnston,* for plaintiff in error.

*Augustine Sams,* contra.

JENKINS, P. J. This was a suit in trover, brought by the Whitestone Marble Company against Willingham Stone Company, to recover certain belts and other articles alleged to have been wrongfully converted by the defendant. It appears that the articles sued for were a part of the equipment of plaintiff's plant at Whitestone, Georgia, and had been left in the manufacturing plant when operation of the same was suspended. It appears that one Gartrell was left by the plaintiff in charge of its plant and equipment as a caretaker, and in consideration of his services in looking after such property he was permitted to occupy a certain dwelling house on the premises. About January 1, 1920, Gartrell went to work for the defendant as superintendent of its plant at Whitestone, the same being a plant similiar to that of the plaintiff at the same place, and some time after his employment as the defendant's superintendent, and while so employed, Gartrell carried the belts and other articles sued for from the plant of the defendant and placed them in use in the defendant's manufacturing business, where they appear to have remained for some time without the knowledge of either the plaintiff or the defend-

ant. The plaintiff, after ascertaining through an independent source that the equipment had been so moved, communicated with Gartrell to ascertain what articles belonging to it had been carried to the defendant's plant, writing Gartrell several letters before he replied. Upon receiving such letters Gartrell communicated with Willingham as follows: "I am sending you this list so you had better go over and see Mr. Pratt (plaintiff's president) to-day, as I have to send him a list of this to-morrow. He has been on me three times in last few days about this." With this letter he enclosed a list of the articles moved from the plaintiff's plant to that of the defendant. The next day he sent a list of the articles to the plaintiff. Following receipt of Gartrell's letter, Willingham communicated with Pratt, and several communications were had between them, looking to a sale of the articles then in the defendant's possession, but no agreement was made with reference thereto. It was not disputed that the defendant was in possession of the articles sued for, but the defendant contended that it had purchased the articles from the plaintiff through Gartrell. It appears that Gartrell had previously sold certain other portions of Pratt's equipment for him, and Gartrell testified that Pratt had authorized him to sell the articles in question for half price, but it does not appear that he made any sort of agreement with the defendant on behalf of the plaintiff for a sale of the articles in question; it appears that he simply carried them over to the defendant's plant and put them in use there. When the plaintiff and the defendant failed to agree on a sale of the articles in controversy, the defendant offered to return them to the plaintiff and pay for the wear on them; this offer was refused and a suit in trover was instituted to recover the property. On the first trial the judge directed a verdict for the defendant, on the theory that it had become the purchaser of the goods sued for, and that, accordingly, the evidence failed to show a conversion. This action of the judge was reversed by this court, on the theory that the evidence did not demand a finding that such a sale had been effected, although it was stated in the opinion that the acts and conduct of plaintiff's alleged agent might possibly have been ratified by the principal. On the second trial the judge ruled that, irrespective of any such ratification by the plaintiff, the agent's acts and conduct did not amount to a sale, and that there had

been a conversion by the defendant, and submitted to the jury, as the only question to be determined by it, the value of the property so converted. . The jury found for the plaintiff in the sum of $800, the defendant's motion for a new trial was overruled, and the movant excepted.

*Judgment affirmed. Bell, J., concurs; Stephens, J., concurs specially.*

STEPHENS, J., concurring specially. All that was held as respects evidence as to a sale, in the former decision of this case (33 *Ga. App.* 512, 126 S. E. 859), was that the evidence did not as a matter of law demand the inference that the transaction was a sale. Any statement, if there was any, in that decision to the effect that the evidence might have authorized the inference that there had been a sale was unnecessary to the decision, and was therefore obiter and not the law of the case.

I concur in the judgment affirming the judgment of the trial court in the present case in directing a verdict for the plaintiff, upon the ground that the evidence does not authorize the finding that the transaction was a sale, by reason of the fact that the alleged sale, if made, was made by the alleged agent of the plaintiff to himself as the alleged agent of the defendant, without the express knowledge and consent of the plaintiff and in the absence of full knowledge on the part of the plaintiff of all the facts. See section 3582 of the Civil Code (1910).