28827. UNION CENTRAL LIFE INSURANCE CO. *v.* TRUNDLE.

554

*R. Carter Pittman, Matthews, Owens & Maddox,* for plaintiff in error.

*Mann & Mann, D. W. Mitchell, W. M. Henderson,* contra.

GARDNER, J.   Robert O. Trundle brought an action against the Union Central Life Insurance Company for recovery of certain alleged disability benefits, and alleged that he had furnished timely the proofs of disability as required by the policy.   The court overruled general and special demurrers to the declaration and the trial resulted in judgment for the plaintiff.   The court overruled the defendant's motion for new trial.   The defendant excepted to the orders overruling the demurrers and the motion for new trial.   This court, in *Union Central Life Insurance Co.* v. *Trundle,* 61 *Ga. App.* 110 (5 S. E. 2d, 675), treating the special demurrers as abandoned, held as against the general demurrer that the declaration set forth a cause of action, and that "The evidence demanded a finding, as a matter of law, that the plaintiff did not comply with the provision of the policy as to filing due proof of disability with the home office of the defendant, a condition precedent to recovery, and [that] the court erred in overruling the defendant's motion for new trial."   The court made no ruling on the substantive merits of the claim, save only as they were related to the technical requirement that due proofs of disability be furnished the defendant.   The effect of the ruling was that (see page 116 of the opinion) since the plaintiff had not pleaded unconditional refusal by the company to pay, or waiver of the requirement that such proofs be furnished, but had specifically relied on the averment that the proofs had been furnished, he was held strictly to that allegation, and the proof thereof, which had failed.

Before the remittitur became the judgment of the court (though, in "reversal," there is no requirement that amendment antecede the making of the remittitur the judgment of the court), the plain-

tiff amended his declaration by striking the allegations that he had furnished due proofs of disability and by substituting therefor allegations in effect that, within the time required, he had notified the company of the disability, that the company had denied all liability, and that such action on the part of the company amounted to a waiver of the requirement that due proofs be furnished. In further exposition of the amendment, we quote: "Petitioner shows that as soon as he ascertained his total and permanent disability and while the said contract of insurance was in full force and effect, and while petitioner was totally and permanently disabled as aforesaid, petitioner reported [orally] his disability to the defendant company by going to the defendant company's office in Memphis, Tennessee, and reporting the same to Tom Jones, manager in charge of the defendant's office and business in Memphis, Tennessee. Said oral notice being given to the defendant company's agent and manager on or about the first day of October, 1933, when and at which time the defendant company by and through its agent and manager denied any and all liability under said policy, and stated to the plaintiff that unless he was bedfast and absolutely incapacitated from doing anything at all, that he would not be entitled to any benefits under the policy, and stated to plaintiff that in view of the fact that plaintiff was not bedfast, that the company would not pay anything whatever, and, therefore, denied any liability. . . And defendant acted upon the notice given by plaintiff to defendant's agent and denied liability upon the ground that plaintiff was not totally and permanently disabled at that time."

The defendant objected to the allowance of the amendment, upon the grounds (1) that the amendment set forth a new and distinct cause of action; (2) that "the questions raised in the original declaration and the evidence introduced thereon, having been held adversely to the contentions of the plaintiff on a writ of error to the Court of Appeals in this case, and the allegations made in the amendments so offered could have been made at the time of the filing of the original declaration, the plaintiff can not now add any ground not embodied in his original declaration, as the same has been abandoned;" and (3) that the amendments averring waiver were contradictory to the original allegations of furnishing due proofs of disability. The questions for determination are whether the amendments were properly allowable, whether the evidence sup-

ported the verdict, and whether the special assignments of error on the overruling of the motion for new trial are meritorious.

■■ A judgment of reversal by this court of the judgment of the trial court, in the absence of direction, vacates that judgment in toto, and the case thereafter stands for trial de novo, as in the first instance. *Walker* v. *Dougherty,* 14 *Ga.* 653; *United States Fidelity & Guaranty Co.* v. *Clarke,* 187 *Ga.* 774, 782 (2 S. E. 2d, 608), and cit. "All parties, whether plaintiffs or defendants, in the superior or other courts, whether at law or in equity, may at any stage of the cause, as matter of right, amend their pleadings in all respects, whether in matter of form or of substance, provided there is enough in the pleadings to amend by." Code, § 81-1301. The declaration in the instant case was amendable, as in other cases. *Mayor &c. of Monroe* v. *Fidelity & Deposit Co.,* 50 *Ga. App.* 865 (2) (178 S. E. 767); *United States Fidelity &c. Co.* v. *Clarke,* supra. Although the former ruling of this court was that "the evidence demanded a finding, as a matter of law, that the plaintiff did not comply with the provision of the policy as to filing due proof of disability with the home office of the defendant, a condition precedent to recovery" and that the defendant was not entitled to recover, nevertheless, the case stood on the docket for trial. *Mayor &c. of Monroe* v. *Fidelity & Deposit Co.,* supra. The right to require the furnishing of due proofs of disability as a condition precedent is a regulatory provision (Code, § 56-831). It does not inhere in the substantive merits of the cause, but goes only to its enforcement. Whether the condition precedent must be met, or be it waived, the cause of action is the same. The plaintiff had the right to strike the allegations of compliance with the requirement of furnishing due proofs of loss, and amend the declaration by alleging unconditional refusal by the company to pay and waiver. *Liverpool & London & Globe Insurance Co.* v. *Ellington,* 94 *Ga.* 785 (2) (21 S. E. 1006). The objections that the amendments were too late in not being made during the first trial, but only after the case had been decided by this court and returned for another trial, and that they were contradictory to the pleadings as originally made, are without merit. The court having formerly held that the declaration set out a cause of action, and the amendments being properly allowed, it follows that the demurrers renewed to the declaration as amended were properly overruled.

The evidence supported the verdict. The jury were authorized to find that the defendant, within the time limit under the contract when due proofs of disability were required to be filed, unconditionally refused to pay, and that such refusal constituted a waiver of compliance with that condition of the policy. The jury were authorized to find that the plaintiff went to the office of the defendant in Memphis, Tennessee, and orally reported his claim of disability; that the "manager" of that office on September 27, 1933, reported the claim to the home office; that the "manager" of the Memphis office on October 7, 1933, notified the plaintiff as follows: "Although you have not provided us with the letters from the Little Rock physicians who attended you during your illness we wrote directly to our company and submitted your case. Their reply is that disability clause No. 6 (the clause attached to your policy) provides that proof of disability is to be submitted while the insured is totally disabled. Indeed we regret that it is impossible for the company to take any action at this belated date on your case." The jury were further authorized to find that the defendant admitted to the attorneys for the plaintiff on December 17, 1936, that it had received no notice of disability from the defendant *at any time save the notice* to it in 1933, when "it appeared that the insured was still working so that no claim for benefits could be allowed." The jury were authorized to find that the plaintiff had been stricken with paralysis, and had been unable to work save at different jobs at only short periods of time, and at only a very small per centum of his original wage scale and earnings before the paralysis, and that the reduction in earning power was from the original scale of $300 or more, to the reduced scale from $90 to $20, to $5 to $10 per month. The jury were authorized to find that the plaintiff had been reduced to this greatly lessened scale of wages, and had been suffering from and disabled by paralysis when he reported his disability to the Memphis office, and that he so advised the "manager" of that office. Under the authority of *Cato* v. *Ætna Life Insurance Co.*, 164 *Ga.* 392 (138 S. E. 787), and under the subsequent consistent decisions of our courts in line with the principles announced therein, the plaintiff was permanently and totally disabled at the time of reporting his disability to the Memphis office. While the defendant declined payment because under the facts as given the Memphis office it contended it

was not liable, the plaintiff being at that time still "working," the refusal for this reason was not in law adequate, and therefore constituted the refusal an "unconditional" refusal to pay. Such refusal amounted to a waiver of the requirement of furnishing due proofs of disability as required by the policy.

It is unnecessary to decide whether the report of disability was made to *such an agent* as might have authority to deny liability, as it appeared that the defendant had notice of the claim and that the ultimate denial of liability related back to it. It became immaterial whether the policy subsequently lapsed, and whether its reinstatement was procured by fraud on the part of the insured, when in fact the policy, providing against such an eventuality if the insured became totally and permanently disabled, had not lapsed.

■ A careful review of the special assignments of error discloses no merit.

*Judgment affirmed. MacIntyre, J., concurs. Broyles, C. J., disqualified.*

ON MOTION FOR REHEARING.

GARDNER, J. Movant insists that the court has overlooked certain statutes and legal principles and decisions of our courts which are controlling, and that the ruling when the case was here on a former appearance (61 *Ga. App.* 110, supra) is likewise controlling, adversely to the opinion in the instant case, and that a different judgment should have been rendered.

1. This subdivision of the motion is prefatory only.

2, 3. Movant insists "that the former decision of the court, on proper issues presented, held: (1) that there was no such refusal to pay on the part of the company as would make the filing of proof unnecessary; (2) that the letter written by Jones of the Memphis office, dated September 27, 1933, was insufficient to put the home office on any notice whatever of the existence of any claim for 'a total and permanent disability;' (3) that Jones, of the Memphis office, in writing the letter to the home office, was the agent of the plaintiff, and not of the company; and (4) that all of the correspondence which was before the court on the former trial, and which is in the present record, did not show that the home office had declined to pay the plaintiff under the policy for any *total and permanent disability.*" Granting that the insistence of movant is

correct, it nevertheless remains that the court was passing on all issues as they related to the allegations of the plaintiff that he had filed due proofs of disability with the company as required by the policy. The court expressly held: "the plaintiff did not plead, and does not now insist, on any waiver by the company, but based his right to recovery on the contention [as alleged] that he had fully complied with the conditions precedent as to furnishing proof." The doctrine of the law of the case includes "every applicable proposition of law actually applied to the facts and *pleadings involved* [italics ours]; and a rule thus announced, so far as it relates to the case in which it was laid, is, in all subsequent proceedings therein, binding alike upon the trial court and the appellate court announcing it." *Willingham Stone Co.* v. *White-Stone Marble Co.*, 36 *Ga. App.* 230 (2) (136 S. E. 180). But where in the subsequent case standing for trial de novo the pleadings amended present new issues, such issues stand for original adjudication, both in law and in evidence. In this case on its former appearance the court did not pass upon the substantive merits of the cause of action, whether under the terms of the policy total and permanent disability was in fact existing. The pleadings as amended struck the allegations of having furnished due proofs of disability, and substituted therefor the allegation, largely the antithesis of the former, that the company unconditionally refused to pay and thereby in law waived the requirement of furnishing due proofs as required under the policy. The evidence in the instant case, whether substantially the same or different from that on the former trial, goes to the proof of this issue without the bar of former adjudication, and additionally to the issue of the existence of permanent and total disability under the terms of the policy, that also as an original adjudication.

4, 5. The evidence authorized a finding that the plaintiff suffered a stroke of paralysis about June 1, 1930, and that this paralytic condition was continuous until, and beyond, September 27, 1933, the date of the second interview with the "manager" of the defendant's Memphis office, that from the inception of the stroke the condition of the plaintiff grew gradually worse in ability to talk, walk, and generally to pursue his usual customary callings, as well as other jobs unsuccessfully attempted, and that at the time of the interview he was sustaining, under the authority of *Cato* v.

*Ætna Life Ins. Co.,* supra, total and permanent disability within the terms of the policy; and that the purpose of visiting and interviewing "Jones" was to secure disability benefits.

Even though there was some evidence, by witnesses who were not parties to the case, that the plaintiff on the two visits in question was seeking disability benefits for a temporary total period of disability existent in 1930, the jury were authorized to resolve the conflicts in the evidence in favor of the verdict as returned. Also, even though the plaintiff himself testified on cross-examination that he was calling attention to a disability existent in 1930, his evidence was not so contradictory as to require against him, as the party at interest, a different finding by the jury, since the existence of such a disability, were the jury to so credit the testimony, was not inconsistent with the paralytic condition of the plaintiff arising in June, 1930, but was consistent therewith and as a continuous part thereof. The evidence further authorized a finding that "Jones" was fully informed of the condition of total and permanent disability of the plaintiff, and that the extent of this information was more than "just dragging a foot," that all matters as above indicated were discussed, even to the extent that, notwithstanding the plaintiff's stroke and his gradually worsened condition, he had been holding temporary jobs at greatly reduced pay. While the evidence also authorized a finding that he was working at the time of the second interview, it further disclosed that "Jones" was informed that the plaintiff was being fired at the end of the (current) month, because of his disability. The effect of the ruling of the court in this case on its former appearance was, *on the issue of having furnished due proofs of disability,* that "Jones" was the agent of the plaintiff. Such ruling is not binding on the question as to whose agent "Jones" was in the matter of *receiving* information for the purpose of apprisement to the home office, on the issue of unconditional refusal to pay and consequent waiver. For this purpose "Jones" was the agent of the defendant, in that ultimately· his identity was lost in that of the manager, Brooks, with Jones being his amanuensis. M. E. Brooks, manager, by Tom Jones, on September 27, 1933, wrote C. S. Joseph, manager of the disability and income department of the home office of the defendant. Joseph, manager, on October 3, 1933, replied to this letter, addressing the communication (the contents not being in the rec-

ord of evidence) to M. E. Brooks, manager. Four days later, on October 7, 1933, M. E. Brooks, manager, by Tom Jones, wrote to the plaintiff, the contents of the letter being already set forth in the opinion in the instant case. However it might have been that "Jones" was the agent of the plaintiff (61 *Ga. App.* 110) to have received the literal, physical, properly prepared due proofs of disability and to have sent them to the home office of the defendant, or on behalf of the plaintiff to have prepared papers [letter] the equivalent of such proofs for forwarding to the home office, in behalf of the plaintiff, it is evident that the identity of "Jones" was lost in that of Brooks as manager, and that the defendant was so treating him for all purposes, save only as Jones was the amanuensis of Brooks.

Brooks, manager, by his amanuensis, notified the home office, on September 27, 1933: "We are advised by the above insured that for a considerable period beginning about June 1st, 1930, he was incapacitated and totally unable to engage in any work of any nature. At this time he has recovered sufficiently to be employed. He has raised the question as to whether he would not be entitled to disability benefits for the period during which he was incapacitated, provided, of course, that proper evidence is submitted and established of the correctness of his statements. We have advised him to secure from each of the attending physicians who consulted him during his period of infirmity full statements and these will be forwarded to you as soon as received." As to this letter Mr. Jones testified: "That letter is bound to have been written on the basis of what Mr. Trundle *had reported to me; that he had been disabled since 1930* [italics ours], because . . I was very specific to state: 'We are advised by the above insured that for a considerable period beginning about June 1st, 1930, he was incapacitated and totally unable to engage in any work of any nature.'" The record discloses that the defendant, by its manager Joseph, having received this communication, wrote to Brooks of the Memphis office, the contents of which not being before us. Then Brooks, manager of the Memphis office, by Jones, his amanuensis, wrote to the plaintiff, under date of October 7, 1933: "Proof of disability is to be submitted while the insured is totally disabled . . it is impossible . . to take any action at this belated date on your case." The defendant admitted that "we were not notified of any

562

disability until 1933, and it appeared that the insured was *still working,* so that no claim for benefits could be allowed." (Italics ours.) The evidence authorized the jury to find that total and permanent disability originally arising by paralysis in June, 1930, was currently existing at the time of the notice to Brooks [Jones], manager of the Memphis office, through Jones, the amanuensis; that the claim for such disability within the terms of the policy was effectually made to the manager of this office; that this office by its manager, Brooks, by his amanuensis, Jones, notified the home office; that the notice to the home office was ample to apprise the defendant of the nature of the claim, or sufficient in any event to put the defendant on notice as would require further inquiry, lest it act at its peril; that the home office, acting by Joseph, manager, notified Brooks of its decision, and then Brooks, acting through his amanuensis, notified the plaintiff that the company would not pay the claim. While the evidence did not disclose the nature of the claim which the home office advised the manager of the Memphis office it was declining to pay, it does appear, and the jury was so authorized to find, that the nature of the claim under consideration between them was that of "total and permanent disability," because as to this claim the defendant admitted it was that as to which the plaintiff was "still working, so that no claim for benefits could be allowed." *The plaintiff was not "still working" as to any temporary claim existent in 1930.* The jury thus was authorized to find that the defendant was conditionally refusing to pay a claim for total and permanent disability, for the reason and on the condition that the plaintiff was "still working." Such conditional refusal was in law inadequate as a sufficient reason under the facts for the refusal, and as would relieve the defendant from liability; and accordingly it constituted the refusal as "unconditional" and as a waiver of the requirements of filing of proofs of disability as required by the policy. The evidence of continuous total disability over the months sued for was sufficient to sustain the verdict.

6-10. Under the foregoing rulings and the opinion as rendered, the questions raised under these subdivisions need no extended discussion. The questions whether "Jones" was such an agent as to deny liability and bind the company, whether under the laws of Georgia or those of Tennessee, or was such an agent as to deny liability, with ratification by the defendant, are not material or

harmful to the defendant, as the refusal to pay, as we have indicated, related directly to it. But on the assignment of error that the court erred in charging that the plaintiff was entitled to recover if the jury should find that the plaintiff had furnished due proofs as required by the policy, the court committed error in charging on this issue, as the court had expressly ruled on the former appearance of this case that the evidence did not support this issue, and this issue had been expressly stricken by the plaintiff. As a general rule, when instructions are given to the jury which are not warranted by the pleadings and the evidence, or by the evidence, which are calculated to confuse and mislead the jury, a new trial should be granted. *Blackwell* v. *Partridge,* 156 *Ga.* 119 (118 S. E. 739) ; *Patterson* v. *Burroughs,* 19 *Ga. App.* 72 (90 S. E. 974). But an erroneous charge to the jury on an issue not involved, either in the pleadings or the evidence, will not require a reversal when such error is not prejudicial to the losing party. *Savannah Electric Co.* v. *Joseph,* 25 *Ga. App.* 518 (103 S. E. 723). However, even though the instructions be erroneous and may cause the jury to arrive at their verdict by being misled or confused, nevertheless such erroneous charge will not work a reversal where the same result would necessarily be reached by another trial and verdict under correct instruction (*Fuller* v. *Atlanta,* 66 *Ga.* 80 (7)), or where the verdict is clearly supported by the evidence (*Luke* v. *Mayo,* 18 *Ga. App.* 614 (2) 89 S. E. 1090), or where the verdict is right (*Stix* v. *Pump,* 36 *Ga.* 526, 532) under the evidence contained in the record. Applying these principles, the erroneous instruction to the jury will not require a reversal. The verdict was amply authorized, if not demanded; it was right under the evidence. *Wellborn* v. *Weaver,* 17 *Ga.* 267 (63 Am. D. 235).

*Rehearing denied. MacIntyre, J., concurs. Broyles, C. J., disqualified.*

DECIDED JULY 15, 1941.   REHEARING DENIED JULY 30, 1941.